IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  )
                           )
        vs.                ) Criminal No. 10-0029
                           )
ANDREW TERRY               )

MEMORANDUM

Gary L. Lancaster,                              November 8, 2010
Chief Judge.

Defendant, Andrew Terry, has been charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922 (g)(1) and 924 (e)(1). Defendant filed a motion to suppress the firearm seized by Pittsburgh police officers from his person. [doc. no. 24]. He argues that the firearm was fruit of an unlawful search that violated his Fourth Amendment rights. Defendant has standing to present this motion.

The government contends that the police officers had reasonable suspicion to justify a Terry search because defendant violated the local open container ordinance, and made movements that, to a trained police detective, indicated the concealment of contraband or weapons. The principal issue presented by the motion is whether officers had reasonable suspicion to pat down defendant.

On October 20, 2010, the court held an evidentiary hearing on defendant's motion. [Evidentiary Hearing Transcript, doc. no. 38, hereinafter "Tr."]. At the hearing, Detective Scott

Love testified for the government. He is a fourteen year veteran of the Pittsburgh police department and a member of the vice squad. His experience includes firearms and narcotics law enforcement.

Defendant testified on his own behalf. Ms. Dela Harris, defendant's cousin, and Ms. Joanne Reese, defendant's mother, were both present at the scene and also testified for the defense.

After considering both the testimony from the suppression hearing, and the parties' briefs on this matter, the court is prepared to rule. For the following reasons, defendant's motion to suppress will be denied.

I. FINDINGS OF FACT

The witness' testimonies were generally consistent in their description of the events at issue. Thus, except where specifically noted, the following material facts are undisputed.

On March 11, 2009, at 11:55 p.m., Detective Scott Love, along with Detectives Judd Emery and Mark Adametz ("the detectives"), were traveling in the 2500 block of Maple Avenue, in the Northview Heights section of the City of Pittsburgh. Tr., p. 7. Detective Emery was driving, and Detective Love was in the front passenger seat. Detective Mark Adametz sat in the back seat of the vehicle. Tr., p. 8.

Northview Heights is a relatively high crime area. Tr., p. 19. Throughout his career, Detective Love made numerous arrests in Northview Heights for drug trafficking and firearm-related crimes. He patrolled that area frequently and was familiar with its crime rate. Tr., p. 6, 44. He had also made arrests on Maple Avenue.

On that evening, the detectives wore plain clothes and drove an unmarked car. Tr., p. 7. As the detectives drove along Maple Avenue, they noticed a black Subaru, parked, with its driver side door open and extending into the street. Tr., p. 23. Ms. Dela Harris, defendant's cousin, stood by the driver's side door. The open door, with Ms. Harris standing next to it, obstructed traffic, and caused the detectives to stop their car. Tr., p. 8, 10, 26.

The passenger side door of the vehicle was also ajar. Mr. Terry stood next to the passenger side of the vehicle, facing the police officers as they drove up. Tr., p. 24. The car was parked next to the sidewalk across the street from his home. Tr., p. 9. A streetlight illuminated the immediate vicinity of the stop. The detectives' vehicle headlights were also on and functional. The detectives also had flashlights. Tr., p. 18.

As the detectives stopped, Detective Love observed an open 40 ounce bottle of St. Ides malt liquor in defendant's left

hand. Tr., p. 9. Detective Love got out of the car and identified himself as a Pittsburgh police officer. Tr., p. 28. There were two reasons he got out to investigate: 1) to determine why Ms. Harris was standing in the middle of the street and 2) to either cite Mr. Terry for a local ordinance violation for having an open container of alcohol on a public sidewalk or to direct him to pour out the beverage. Tr., p. 17, 26.

The witness' accounts of what happened next differ. Detective Love testified that Mr. Terry made various suspicious movements, including turning around slightly, slightly bending towards the passenger side of the vehicle, and simultaneously reaching towards the car with his right hand. Tr., p. 10, 29-32. He asserts that Mr. Terry made a shoving motion towards his waistband. Tr., p. 10. Detective Love further testified that Mr. Terry made all of these movements while he held the open container in his left hand. Tr., p. 31. Based upon his experience and training, he believed that Mr. Terry was concealing either a weapon or contraband in his waistband.

Mr. Terry denied that he made such movements. Tr., p. 68. He testified that he told the officers that he lived across the street and would pour out the beverage. Tr., p.69. He testified that he remained still, did not make any movements toward his waist or the car, and fully complied with the officer's

4

commands. Tr., p. 68-70, 72. Defense witnesses of the incident corroborated his testimony.

We have taken into account the traditional methods of assessing credibility of a witness by considering the following factors: 1) the opportunity and ability of the witness to see or hear or know the things about which the witness testified; 2) the quality of the witness's knowledge, understanding, and memory; 3) the witness's appearance, behavior, and manner while testifying; 4) whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice; and 5) whether the witness's testimony was consistent or inconsistent with other evidence. Taking these factors into consideration, we find the testimony of Detective Love to be more credible on this issue.

Thereafter, Mr. Terry fully complied with Detective Love's orders. When Detective Love demanded that Mr. Terry put his hands up, Mr. Terry complied by raising his hands while holding the bottle. Tr., p. 34. Based on Detective Love orders, Mr. Terry put the bottle on the roof of the car. Tr., p. 35. Detective Love ordered Mr. Terry to walk to the rear of the vehicle and place his hands on the trunk of the car. Tr., p. 35-36. Once Mr. Terry got to the trunk of the car, Detective Love placed his hand on Mr. Terry's waistband area and felt what he believed was the handle of a firearm. Tr., p. 38.

5

Defendant then attempted to flee. Tr., p. 71. Detective Love ran after him, tackled him to the ground, and seized the firearm. It was at that point the other detectives assisted Detective Love in detaining the defendant. Tr., p. 34. Consequently, the officers arrested Mr. Terry.

Prior to this encounter, Detective Love did not have any knowledge of Mr. Terry or his criminal record.

Defendant moves to suppress the firearm seized from his person. He contends that the pat-down frisk was unlawful because his conduct did not create reasonable suspicion for the police officers to conduct a Terry frisk.

II. STATEMENT OF REASONS

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV; see also United States v. Ubiles, 224 F.3d 213, 216 (3d Cir. 2000). Warrantless searches are per se unreasonable subject only to a few specifically established and well delineated exceptions. Horton v. California, 496 U.S. 128, 133 (1990). No warrant authorized the search here, therefore, the burden is on the government to prove by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement.

One such exception to the warrant requirement is the Terry stop and frisk. Terry v. Ohio, 392 U.S. 1, 20-22 (1968). First, under this exception, law enforcement must analyze the validity of the stop. A police officer may conduct "a brief investigatory stop when he or she has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000 (citing Terry, 392 U.S. at 30). In evaluating whether the government met its burden with respect to the Terry exception, the court must consider "the totality of the circumstances." United States v. Cortez, 449 U.S. 411, 471 (1981). A mere "hunch" or "inchoate and unparticularized suspicion" cannot justify a stop under Terry. Terry, 392 U.S. at 27. Any evidence obtained pursuant to the investigatory stop that does not meet this exception must be suppressed as "fruit of the poisonous tree." United States v. Brown, 448 F.3d 239, 244 (3d Cir. 2006)(citing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

Second, after a lawful stop, a pat-down frisk for weapons is permissible where the officer is justified in believing that the person is armed and dangerous to the officer or others. Terry, 392 U.S. at 30. It is insufficient that the stop itself is valid; there must be a separate analysis of whether this standard has been met for the frisk. See Arizona v. Johnson, 129 S.Ct. 781, 787 (2009). To assess the legality of a protective frisk, a court also

7

looks at the "totality of the circumstances-the whole picture" to see whether the officer had a particularized, objective basis for his or her suspicion. Cortez, 449 U.S. at 417.

Reasonable suspicion, while not a rigid definition, may be the result of the following factors: "specialized knowledge and investigative inferences . . . , personal observation of suspicious behavior . . . , information from sources that prove to be reliable, and information from sources that-while unknown to the police-prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip. . . " United States v. Brown, 448 F.3d 239, 247 (3d Cir. 2006)(citing United States v. Nelson, 284 F.3d 472, 478 (3d Cir. 2002)). Depending upon the "totality of the circumstances," reasonable suspicion may be the result of one or a combination of the above factors.

Other factors that courts have considered include the amount of light available to the officer during the confrontation, the presence of other officers, the presence of other individuals, whether the suspect exhibits any furtive behavior when approached by the officer, and the nature of the suspected criminal activity. See, e.g., United States v. $84,000 United States Currency, 717 F.2d 1090, 1097-1099 (7th Cir.1983). In evaluating the officer's actions, "we defer to the 'officer's knowledge of the nature and

8

nuances of the type of criminal activity' the officer has observed." United States v. Robertson, 305 F.3d 164, 166 (3d Cir. 2002); see, e.g. Whren v. United States, 517 U.S. 806 (1996); United States v. Moorefield, 111 F.3d 10 (3d Cir. 1997).

In addition, the Court of Appeals for the Third Circuit gives considerable deference to police officers' determinations of reasonable suspicion, see, e.g., United States v. Nelson, 284 F.3d 472, 482 (3d Cir.2002), and the constitutional latitude of the law enforcement is steadily increasing. Courts often defer to personal observations and conclusions, on the theory that experienced officers can infer criminal activity from conduct that may seem innocuous to a lay person. United States v. Arvizu, 534 U.S. 266, 268 (2002); see Wardlow, 528 U.S. at 124.

In the present case, the government asserts that after Detective Love got out of the car and identified himself, defendant made furtive and suspicious movements that justified a Terry frisk. Giving considerable deference to Detective Love's personal observations and experience as a police officer, the court concludes that, for the following reasons, the detectives in the present case had a reasonable and articulable suspicion of criminal activity sufficient to support a pat-down frisk of the defendant and to seize the firearm. U.S. v. Johnson, 238 F.Supp.2d 663, 670

(D.Del. 2002); see also United States v. Arvizu, 534 U.S. 266 (2002).

First, it is clear the initial stop was lawful. Detective Love had probable cause to believe defendant violated the local open container ordinance. Section 601.08 of the City of Pittsburgh Municipal Code states that "[n]o person shall consume alcoholic beverages or carry or possess an open container of alcoholic beverages in the public right of way." A police officer who observes a violation of state laws may lawfully stop the individual committing the violation. See Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977). Defendant, upon his own admission, was holding an open container while standing on a sidewalk. A sidewalk is an easement to the public and a public right-of-way. Norris v. Leonia, 734 A.2d 762, 774 (N.J. 1999). This was a violation of the local ordinance. Thus, based upon Detective Love's personal observations, the initial stop was valid.

Second, it was almost midnight when Detective Love personally observed defendant standing in a location that was known to detectives to be a high-crime area plagued by drug trafficking and gun violence. Over his 14 year career, Detective Love personally made numerous arrests in Northview Heights and on Maple Avenue. He was also familiar with the area's crime rate. While being present in a high-crime area cannot, in and of itself,

support a particularized suspicion that a subject is committing a crime, an officer is permitted to consider a location's characteristics when assessing a situation. Wardlow, 528 U.S. at 124.[1]

Third, as Detective Love got out of the car to address the violation, he identified himself as a Pittsburgh police officer. Subsequently, defendant moved in a furtive and suspicious manner, appeared to Detective Love to be reaching for a weapon or contraband, and seemed to shove something into his waistband. Based upon Detective Love's experience, defendant's movements led him to believe he may have been concealing a weapon or contraband. Additionally, there was a possibility that Mr. Terry could have impaired judgment or become belligerent due to his consumption of alcohol.

---

[1] The court in United States v. Brown, 448 F.3d 239, 251 (3d Cir. 2006), created a test for analyzing suspicious behavior when there has been a previous insufficient tip. The test includes: 1) presence in a high crime area; 2) a suspect's presence on a street at a late hour; 3) a suspect's nervous or evasive behavior or flight from the police; and 4) that a suspect behaves in a way that conforms to police officer's specialized knowledge of criminal activity. Though these factors are not applicable to the present case because there is no tip or source, they are instructive in our analysis.

All of these facts when viewed together allowed Detective Love to expand the scope of his investigation for the open container violation to detain defendant for a pat-down frisk for weapons. Therefore, the pat-down frisk was justified for Detective Love's own safety and did not violate defendant's Fourth Amendment rights.

II. CONCLUSION

The government has sustained its burden of proof in this instance. The credible evidence establishes that defendant's constitutional rights were not violated on March 11, 2009. Accordingly, defendant's motion to suppress will be DENIED.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,       )
                                )
    vs.                         )  Criminal No. 10-0029
                                )
ANDREW TERRY                    )

ORDER

AND NOW, this 8th day of November, 2010, IT IS HEREBY ORDERED that defendant's motion to suppress evidence [doc. no. 24] is DENIED.

BY THE COURT:

_____, C.J.

cc: All counsel of record